UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
NICHOLAS VULLO, on behalf of himself and all      :    __ Civ. ____
others similarly situated,      :
     :
               Plaintiffs,      :    **COLLECTIVE AND CLASS**
     :    **ACTION COMPLAINT**
    -against-      :
     :    **DEMAND FOR JURY TRIAL**
NATIONAL DEBT RELIEF LLC, DANIEL      :
TILIPMAN, and ALEX KLEYNER,      :
     :
               Defendants.      :
-------------------------------------------------------------------- X

       Representative Plaintiff, Nicholas Vullo, individually and on behalf of all others similarly

situated, as class representative, upon personal knowledge as to himself and his own acts, and upon

information and belief as to other matters, alleges against Defendants, National Debt Relief LLC

("NDR") and Daniel Tilipman and Alex Kleyner (with Mr. Tilipman, the "Individual "Defendants"

and collectively, with NDR, "Defendants"):

## NATURE OF THIS ACTION

       1.    Vullo (also referred to as "Representative Plaintiff") brings this action against

Defendants for unpaid wages and affirmative relief on behalf of himself and all other similarly-

situated current and former employees of Defendants who work, will work or worked at NDR

performing inside sales duties or serving as "Negotiations Specialists" and performing the duties they

perform, who have not agreed to arbitrate employment claims against Defendants and who have not

waived their rights to proceed against Defendants as members of a class and / or collective.

       2.    Representative Plaintiff brings this action on behalf of himself and the similarly-

situated individuals, described above and herein, who elect to opt into this action pursuant to the Fair

Labor Standards Act's collective action provision, 29 U.S.C. § 216(b), to redress Defendants'

violations of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.*, ("FLSA") and the regulations thereto, including Title 29 of the Code of Federal Regulation ("CFR"), Subtitle B, Chapter V.

3. In addition, Representative Plaintiff brings this action as a Rule 23 Class Action, pursuant to the Federal Rules of Civil Procedure, on behalf of himself and these similarly-situated individuals, as described above and defined herein, based on Defendants' violation of the New York State Labor Law, as amended, §§ 190, *et seq.* and 650, *et seq.* ("NYLL"), and the regulations thereto, including Title 12 of the New York Codes, Rules and Regulations ("NYCRR") §§ 142, *et seq.*

4. Defendants willfully engaged in a pattern, practice and policy of unlawful conduct by failing to record, credit, or compensate their inside sales employees, including Representative Plaintiff and members of the prospective FLSA Collective and Rule 23 Class, for all the time Defendants required, suffered and / or permitted these employees to work.

5. Defendants willfully engaged in a pattern, practice and policy of unlawful conduct by failing to pay Representative Plaintiff and members of the prospective FLSA Collective the premium overtime rate of 1.5 times their regular hourly wage rate for all time worked over 40 hours in a seven-day week, as required by the FLSA and the CFR (together hereafter referred to as the "FLSA," absent a specific cite) and by the NYLL and the NYCRR (together hereafter referred to as the "NYLL," absent a specific cite) for non-exempt employees, which under the FLSA and NYLL include inside salespeople.

6. Defendants willfully engaged in a pattern, practice and policy of unlawfully failing to pay Representative Plaintiff and members of the Rule 23 Class minimum wage, in further violation of the NYLL.

7. Defendants willfully engaged in a pattern, practice and policy of neglecting their

legal obligation to provide Representative Plaintiff and members of the Rule 23 Class with written notice when hired explaining their compensation terms, including notice of their regular rate or rates of pay and their overtime rate or rates of pay, in violation of the NYLL.

8.     Additionally, Defendants willfully engaged in a pattern, practice and policy of violating the NYLL by not providing Representative Plaintiff and the Rule 23 Class members with complete and accurate pay statements with each paycheck.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction pursuant to 29 U.S.C. 201, *et seq.*, 28 U.S.C. §§ 1331 and 1337.  This Court has supplemental jurisdiction of the NYLL claims under 28 U.S.C. § 1367.

10.     Upon information and belief, the amount in controversy in this matter exceeds $5,000,000, exclusive of interests, attorneys' fees and costs. Upon information and belief, at least one member of the Rule 23 Class is a member of a different state than Defendants. Accordingly, this Court has original jurisdiction over all claims in this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because the Rule 23 Class Action has (a) 100 or more members in the proposed class, (b) at least some members of the proposed class have a different citizenship than Defendants and (c) the aggregate claims of the proposed class members exceeds $5,000,000.

11.     This Court is empowered to issue a declaratory judgment pursuant to 2 U.S.C. §§ 2201 and 2202.

12.     This Court is empowered to issue injunctive relief pursuant to 29 U.S.C. § 217.

13.     Defendants do business in the State of New York, within the Southern District of New York, maintaining a principal place of business at 11 Broadway, 16th Floor, New York, New York 10004.

14.     Defendants are subject to personal jurisdiction in the State of New York.

15.     Accordingly, venue properly lies in the Southern District of New York, pursuant to 28 U.S.C. § 1391.

## THE PARTIES

**Plaintiff**

### *Representative Plaintiff, Nicholas Vullo*

16.     Representative Plaintiff, Nicholas Vullo, is a resident of Arizona State, Maricopa County.

17.     At all relevant times, Vullo was an "employee" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e) and the NYLL § 190(2)(5).

18.     NDR employed Vullo from about August 2013 until August 14, 2015 as a Certified Debt Specialist. After August 14, 2015, Vullo became a Negotiations Specialist.

19.     As a Certified Debt Specialist, Vullo worked as an inside salesperson. His duties included answering telephone calls from individuals seeking to restructure their debt and placing telephone calls to individuals who had not solicited NDR to whom NDR hoped to sell its debt-restructuring services, i.e., making "cold calls."

20.     Vullo, as an inside sales person, was a non-exempt, covered employee within the meaning of the FLSA and the NYLL, and therefore, entitled to overtime pay pursuant to both statutes.

21.     Negotiations Specialists work with the credit card companies that the debtor-clients owe money to and negotiate on the debtor-clients' behalf.

22.     As a Negotiations Specialist, Vullo was a non-exempt, covered employee within the meaning of the FLSA and the NYLL, and therefore, entitled to overtime pay pursuant to both statutes.

23.     Vullos's executed Consent to Be a Party Plaintiff form, pursuant to 29 U.S.C. §

216(b), is attached as <u>Exhibit A</u>.

**<u>Defendants</u>**

### *National Debt Relief, LLC*

24.     National Debt Relief, LLC is and, at all relevant times, was a domestic limited liability company organized and existing pursuant to the laws of the State of New York.

25.     NDR's corporate headquarters and principal office is in New York, at 11 Broadway, 16th Floor, New York, New York 10004.

26.     NDR is a for-profit company in the business of counseling individuals who have enrolled in its debt consolidation program with the goal of restructuring and reducing their unsecured debt.

27.     NDR has been one of the nation's largest debt settlement companies since at least October 2009.

28.     NDR, at all relevant times, constituted and constitutes an "enterprise" within the meaning of the FLSA, 29 U.S.C. § 203 (r)-(s).

29.     NDR, at all relevant times, was and is an "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d) and the NYLL § 190(2)(5).

30.     NDR, as an employer and enterprise, engages and, at all relevant times, engaged regularly in interstate commerce, within the meaning of the FLSA, 29 U.S.C. §§ 203 (b), (d), (g), (i), (r) and (s).

31.     Defendants employed Vullo and members of the prospective Rule 23 Class and FLSA Collective as inside salespeople, positions which the FLSA and the NYLL classify as "covered" and "non-exempt."

32.     Indeed, throughout both the Class and Collective Periods, as defined herein,

Defendants employed hundreds of inside salespeople with the title "Certified Debt Specialist," as well as employees performing similar inside sales duties to those of Certified Debt Specialists, and Negotiations Specialists, who, like Representative Plaintiff, were covered, non-exempt employees pursuant to the FLSA and the NYLL, and who worked substantial overtime without receiving the overtime compensation to which they were entitled, in violation of the FLSA and NYLL.

33.     For example, in addition to "Certified Debt Specialist," National Debt Relief refers and / or has referred to its employees performing similar, non-exempt inside sales jobs with various titles, including, among other, "Debt Specialist," "Debt Relief Specialist," "Sales Representative," "Solution Sales Specialists," "Senior Certified Debt Specialist," "Debt Consultant," and "Certified Debt Consultant."

### *The Individual Defendants, Daniel Tilipman and Alex Kleyner*

34.     Defendant Daniel Tilipman is a founder and principal of NDR who serves as its President.

35.     Defendant Alex Kleyner is likewise a principal of NDR, serving as its CEO.

36.     The Individual Defendants are "employers" for purposes of the FLSA and the NYLL, who were acting as such and within the course and scope of the employer-employee relationship at all relevant times.

37.     The Individual Defendants, at all relevant times, exercised sufficient control of NDR's operations to be covered employers pursuant to the FLSA and the NYLL.

38.     The Individual Defendants directly managed NDR's day-to-day operations. For example, the Individual Defendants possessed the authority to hire and fire employees; implemented and supervised employees' work schedules; set employee pay rates; devised, directed, implemented and supervised NDR's wage and hour practices affecting Defendants' employees and maintained

employee records, including payroll records.

39.     Indeed, at all relevant times, the Individual Defendants acted on NDR's behalf and consented to, ratified and authorized NDR's acts alleged herein.

## COLLECTIVE ACTION ALLEGATIONS

40.     Representative Plaintiff brings the First Claim, for unpaid overtime, as a collective action pursuant to the FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of himself and all similarly-situated persons defined as:

All individuals:

    (1)    who are, have been, or will be employed by NDR, within the United States, (a) in positions involving inside sales duties, including, but not limited to, employees who work, will work or worked for NDR as Certified Debt Specialists, Debt Specialists, Sales Representatives, Solution Sales Specialists, Sales Specialists, Senior Certified Debt Specialists, Debt Relief Specialists, Certified Debt Consultants, Debt Consultants, or in any other capacity performing inside sales duties, and (b) as Negotiations Specialists, or under any other title working with the credit card companies that NDR's debtor-clients owe money to and negotiating on the debtor-clients' behalf.

    (2)    who worked overtime for NDR but did not receive overtime compensation;

    (3)    who did not agree to (a) arbitrate the FLSA claim brought herein and/or (b) waive the right to proceed as a member of an FLSA collective; and

    (4)    who (a) file a consent form electing to opt into this Action at any time from this Action's filing date through its final disposition, so long as (b) such consent is filed within three years of the individual's employment with NDR (the "FLSA Collective" or "Collective").

41.     At all relevant times, the Representative Plaintiff and the FLSA Collective members have had substantially similar job requirements and pay provisions and have all been subjected to

Defendants' unlawful conduct alleged herein, including, without limitation, Defendants' failure to compensate the Representative Plaintiff and the FLSA Collective members for overtime worked and Defendants' failure to maintain records legally required by the FLSA, such as accurate records of time worked by non-exempt employees.

42.     Upon information and belief, the FLSA Collective consists of at least 300 individuals.

43.     The issuance of a court-supervised notice of this FLSA Collective Action and an opportunity to opt-in to this action would benefit these numerous similarly-situated current and former employees who Defendants substantially and unlawfully underpaid, among other FLSA violations.

44.     Members of the FLSA Collective are readily identifiable and should be easily located through Defendants' records.

45.     Accordingly, notice should be sent to the FLSA Collective's members pursuant to the FLSA, 29 U.S.C. § 216(b).

## **RULE 23 CLASS ACTION ALLEGATIONS**

46.     The Representative Plaintiff brings the Second, Third, Fourth, and Fifth Claims under Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and a class of individuals consisting of:

> All individuals:
>
> (1)     who are, have been, or will be employed by NDR within New York State (a) in positions involving inside sales duties, including, but not limited to, employees who work, will work or worked for NDR as Certified Debt Specialists, Debt Specialists, Sales Representatives, Solution Sales Specialists, Sales Specialists, Senior Certified Debt Specialists, Debt Relief Specialists, Certified Debt Consultants, Debt Consultants, or in any other role performing inside sales duties, and (b) as Negotiations Specialists, or under any other title working with the credit card companies that NDR's debtor-clients owe money to and negotiating on the debtor-clients' behalf;
>
> (2)     who (a) worked overtime for NDR but did not receive overtime

compensation and/or (b) did not receive minimum wage for every week worked and/or (c) to whom NDR did not provide adequate written notice of their compensation terms at the time of hire in accordance with the NYLL's requirements and/or (d) to whom NDR did not furnish appropriate wage statements for each payroll period pursuant to the mandates of the NYLL;

(3)     who did not (a) agree to arbitrate the NYLL claims brought herein and/or (b) waive the right to proceed as a class member; and

(4)     who were employed with NDR in such capacity at any time from July 19, 2012 through the final disposition of this Action (the "Rule 23 Class" or "Class").

47.     Excluded from the Rule 23 Class are Defendants' legal representatives, officers, directors, assigns and successors or any individual who had a controlling interest in NDR during the Class Period.

48.     While the precise number of Rule 23 Class members is in Defendants' sole control, upon information and belief, the size of the Rule 23 Class exceeds 300 individuals.

49.     The Rule 23 Class members are so numerous that joinder of all members is impracticable.

50.     Defendants have acted or failed to act on grounds generally applicable to the Rule 23 Class, thereby making final injunctive and declaratory relief appropriate to the Rule 23 Class.

51.     Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting its members individually and include, but are not limited to:

(a)     Whether Defendants violated NYLL Article 6, §§ 190, *et seq.*, and the supporting NYCRR, as alleged herein;

(b)     Whether Defendants violated NYLL Article 19, §§ 650, *et seq.*, and the supporting NYCRR, as alleged herein;

(c)     Whether Defendants failed to compensate Representative Plaintiff and the Rule 23 Class for overtime worked and with the overtime premium hourly wages for worked performed in excess of 40 hours per week, as required by NYLL Article 6, §§ 190, *et seq.*; NYLL Article 19, §§ 650, *et seq.* and 12 NYCRR § 142-2.2;

9

(d) Whether Defendants failed to pay Representative Plaintiff and the Rule 23 Class minimum wages during their employment with Defendants, as required by NYLL Article 6, §§ 190, *et seq.*; NYLL Article 19, §§ 650, *et seq.*; 12 N.Y.C.R.R § 142-2.1;

(e) Whether Defendants failed to notify Representative Plaintiff and the Rule 23 Class at the time of hiring and within ten days of their first day of employment written notice, in the employee's primary language, of the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; the regular pay day designated by the employer in accordance with NYLL § 191; and the employee's regular rate of pay and overtime rate of pay, among other things, pursuant to NYLL § 195(1)(a);

(f) Whether Defendants failed to obtain Representative Plaintiff and the Rule 23 Class members' acknowledgments that they received notice as required by §195(1)(a) of the NYLL and preserved and maintained such acknowledgments for at least six years, as required by 195(1)(a) of the NYLL;

(g) Whether Defendants failed to furnish Representative Plaintiff and the Rule 23 Class with accurate statements with every payment of wages, listing the dates of work covered by that payment of wages; the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; and, among other things, the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked, as required by NYLL § 195(3);

(h) Whether Defendants failed to record and maintain accurate records reflecting the Representative Plaintiff and the Rule 23 Class members' regular hourly rate of pay, their overtime rate of pay, the number of regular hours they worked and the number of overtime hours they worked, pursuant to NYLL § 661; and

(i) The nature and extent of class-wide injury and the appropriate measure of damages for the Rule 23 Class.

52. Representative Plaintiff's claims are typical of the claims of the Rule 23 Class he seeks to represent.

53. Representative Plaintiff and the Rule 23 Class have worked or work for Defendants in New York State as non-exempt inside sales employees or as Negotiations Specialists, or performed the duties Negotiations Specialists perform.

54.     Representative Plaintiff and the Rule 23 Class have performed work for Defendants' benefit at a standard rate of pay, including working hours beyond 40 hours per week without being paid overtime compensation of 1.5 times the rate of their hourly compensation, calculated pursuant to a seven-day work week.

55.     Vullo, as Representative Plaintiff, will fairly and adequately represent and protect the Rule 23 Class members. Vullo has retained counsel competent and experienced in complex class actions and in employment litigation.

56.     A class action is superior to other available methods for the fair and efficient adjudication of this action. The Rule 23 Class members have been damaged and are entitled to recovery as a result of Defendants' common and uniform policies, practices and procedures. While the relative damages suffered by individual members of the Rule 23 are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation. Individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit against a corporate defendant in order to recover their damages. Moreover, class certification is superior because it obviates the need for unduly duplicative litigation that not only imposes extra burden upon the courts, but could also result in inconsistent judgments regarding Defendants' practices.

## FACTUAL ALLEGATIONS APPLICABLE TO ALL CLAIMS

### 1.     Inside Sales People

### Defendants Hire Vullo And Their Other Inside Sales People To Work Set Schedules

57.     Defendants hired Representative Plaintiff, Vullo, and members of the Collective and Class who performed inside sales duties (collectively, the "Sales Employees"), to work fixed weekly schedules for an annual salary, plus an opportunity to earn commissions.

58.     For example, Defendants hired Vullo to work nine-hour shifts each weekday, spread over a period of ten hours each day. Vullo's scheduled shifts could vary as to start and end times, but were each spread over ten hours per weekday, from 9 a.m. to 7 p.m., 10 a.m. to 8 p.m., or 11 a.m. to

9 p.m. Monday through Friday, with an hour off for lunch. In addition, Defendants hired Vullo to work one Saturday each month for six hours.

59.     Vullos's annual salary when he was a Certified Debt Specialist with Defendants was $27,000.  Defendants, upon information and belief, paid all their Sales Employees similar salaries to Vullo and calculated Vullo and their Sales Employees' commissions, when earned, using a uniform formula and schedule Defendants created.

60.     When Vullo became a Negotiations Specialist his compensation became hourly-based and NDR paid him $14.45 per hour. Defendants, upon information and belief, paid all their Negotiations Specialists similar rates of pay.

### Although Defendants Hired Vullo And The Sales Employees To Work Set Hours, In Practice, Defendants Require Their Sales Employees To Work Several Additional Hours Each Week Off The Schedule

61.     Although Defendants hired Vullo and the Sales Employees to work set hours, in practice, Defendants demanded Vullo and the Sales Employees to work far more hours than the hours for which Defendants scheduled them.

62.     While Vullo's daily shifts were scheduled to be begin and end at a certain time, Defendants continually required Vullo and the Sales Employees to stay substantially past their scheduled shifts' end times, often more than three additional hours.

63.     Moreover, the promise of a one-hour lunch break Defendants made to Vullo when they hired him was illusory. Vullo and the Sales Employees were not allowed a one-hour break for lunch and, instead, Defendants required them to either pick up or order in lunch, should they wish to eat, and take it at their desk, while continuing to perform work for Defendants.

64.      Likewise, the monthly one Saturday shift for which Defendants hired Vullo was also a misrepresentation. In practice, Defendants pressured Vullo and the Sales Employees to work every Saturday, which most of them did. For example, Vullo usually worked at least three Saturdays a month.

**Defendants Do Not Pay Vullo And Their Sales Employees Overtime For Their Scheduled "Straight Time" Overtime Hours And Do Not Pay Anything For The Additional Off-Schedule Overtime Defendants Suffered And Permitted Them to Work**

65.     Both the FLSA and the NYLL obligated Defendants to pay Vullo and the Sales Employees overtime for all time worked in excess of 40 hours in a seven-day workweek at a rate of 1.5 times their regular hourly rate of pay. FLSA § 207 (a)(2)(C); 29 CFR §§ 778.100 – 778.122; NYLL § 650, *et seq.*; 12 NYCRR § 142-2.1.

66.     However, while the schedule reflected Vullo and the Sales Employees worked overtime each week for either five hours (ten hour shifts, five days a week with an hour for lunch = 45 hours) or eleven hours (45 weekday hours plus six Saturday hours = 51 hours), Defendants did not pay any overtime for the scheduled overtime hours.

67.     For the substantial additional unscheduled hours Defendants suffered, permitted, and required Vullo and the Sales Employees to work each week, Defendants not only failed to pay Vullo and the Sales Employees overtime at a rate of 1.5 times their regular hourly rate of pay, but did not pay them any hourly pay for the off-schedule hours.

68.     Indeed, Vullo, on average, devoted over 60 hours per week working for Defendants' benefit, yet Defendants willfully and unlawfully denied him any overtime compensation, e.g., 1.5 times his hourly rate for 20 hours.

69.     Defendants' failure to pay Vullo and their Sales Employees overtime violated both the FLSA the NYLL.

70.     Moreover, the overtime requirements of the FLSA, the NYLL, and the NYCRR apply regardless of how an employer pays a non-exempt employee, whether with a salary, on a commissions basis, through a combination of both salary and commissions, or otherwise.

**Calculating Non-Exempt Salaried And Commissioned Employees'**
**Hourly Rate Of Pay Under The FLSA And NYLL**

71.     For non-exempt employees who earn a salary and a commission, like Vullo and the Sales Employees, both the FLSA and the NYLL calculate the employee's hourly rate of pay by first dividing the salary plus commissions by the fifty-two weeks in a year to determine the employee's weekly pay.

72.     Then the employee's weekly pay is divided by the number of hours for which the employer hired the employee to work per week, which is called the employee's "straight time," and the resulting is the employee's "regular" hourly rate.

73.     Defendants, for example, hired Vullo to work 45 hours forty weeks of the year, i.e., Monday through Friday, (the "Weekday Weeks") and 51 hours twelve weeks of the year (the "Saturday Weeks").

74.     Vullo's total commissions earned during his about twenty-eight month tenure with Defendants were approximately $28,000, which is an average of roughly $230 per week. With an annual salary of $27,000, Vullo's weekly salary amounted to $519.23 per week. Thus, using a calculation averaging commissions (which, in actuality, varied week to week), Vullo's weekly compensation would equate to around $749.23 ("Weekly Compensation").

75.      Accordingly, Vullo's straight time hourly pay rate for Weekday Weeks would be $16.65 (Weekly Compensation divided by 45 hours), with an overtime rate of $24.97 per hour (1.5 times his hourly rate).

76.     Using the average commissions calculation, Vullo's straight time hourly pay for Saturday Weeks, would have been $14.69 (Weekly Compensation divided by 51 hours) with an overtime rate of $22.04 per hour (1.5 times the hourly rate).

77.     While the FLSA, the NYLL use the straight time hours a non-exempt, salaried

14

employee is hired to work in a week to calculate his or her regular hourly pay rate, if the employee's weekly scheduled straight time exceeds 40 hours, the statutes nonetheless require employers like Defendants to pay non-exempt employees like Vullo and the Sales Employees at the overtime premium rate for all time worked over 40 hours per week, even if the time is included in the employer's regularly-scheduled work week.

78.     Thus, had Defendants <u>only</u> required Vullo to work the hours for which they hired him, Defendants were obligated to pay Vullo $124.85 in overtime each Regular Week and $242.44 in overtime for each Saturday Week.

79.     Defendants, however, paid Vullo and their Sales Employees none of the premium overtime pay to which they were entitled in addition to their hourly pay for the straight time overtime they worked and nothing in hourly compensation for the numerous additional unscheduled overtime hours Defendants required them to work each week.

**Defendants Failed To Pay Vullo And The Sales Employees New York's Statutorily-Required Minimum Wage The Weeks They Did Not Earn Commissions**

80.     Under the FLSA and NYLL, each workweek stands alone for purposes of determining overtime pay owed. 29 CFR § 778.104-106; 12 NYCRR § 142-2.

81.     Several weeks during his employment with Defendants, Vullo was not paid any commission compensation, despite working 20 or more hours of overtime. Thus, during the Class and Collective periods, Defendants not only violated the overtime laws, but also frequently failed to pay New York's legally-required minimum wage.

82.     From 2010 through December 30, 2013, New York's statutorily-required minimum wage was $7.25 per hour.

83.     On December 31, 2013, New York's statutorily-required minimum wage became

$8.00 per hour.

84. On December 31, 2014, New York's statutorily-required minimum wage became $8.75 per hour.

85. On December 31, 2015, New York's statutorily required minimum wage became $9.00 per hour.

86. On December 31, 2016, New York's statutorily required minimum wage became $9.70 per hour.

87. On December 31, 2017, New York's statutorily required minimum wage became $10.40 per hour.

88. By failing to pay Vullo and the Sales Employees overtime pay and any pay for hours worked off the schedule, Defendants failed to Vullo and the Sales Employees minimum wage for a substantial number of weeks during which they worked for Defendants.

89. For example, in 2014, Vullo was employed by Defendants the entire calendar year, when New York's minimum wage was $8.00 an hour.

90. As in his other years, Vullo regularly worked approximately 60 hours per week in 2014, for which Defendants paid him $519.23 in salary.

91. However, at $8.00 an hour, minimum wage for hours of overtime worked in 2014 amounted to $12.00 for every hour worked beyond 40 in one week.

92. Thus, in 2014, at minimum wage, a New York employee must earn $320.00 for the first 40 hours in a work week and $12.00 per hour for each additional hour worked in a seven-day week.

93. At minimum wage, then, in 2014, an employee must be paid $240.00 dollars for twenty hours of overtime and, for a sixty-hour work week, earn a minimum of $560.00—more than

the $519.23 Defendants paid Vullo for the same hours.

94.     Moreover, in 2015, Vullo continued working for Defendants, at the same salary when the minimum wage was even higher, at $8.75 per hour.

**Defendants Disregard Their Legal Obligation To Provide Written Notice To Vullo And The Sales Employees Disclosing Their Compensation, Then Unlawfully Fail To Furnish Them With Accurate And Complete Pay Statements For Each Pay Period**

95.     Defendants did not provide Vullo, and upon information and belief, any Sales Employees, written notice describing the terms of their compensation, their pay rates and their overtime premium pay rate, among other things, at the time of hire, as mandated by § 195(1) of the NYLL, or at any time.

96.     Defendants also did not provide Vullo with accurate or complete wage statements with each pay check, as required by NYLL § 195(3).

97.     Section 195(3) of the NYLL mandates Defendants furnish a statement with every wage payment, which for "all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided  by  New York state law or regulation, the statement shall include the regular hourly rate or rates of pay; the overtime rate or  rates of pay; the number of regular hours worked, and the number of overtime hours worked."

98.     While Vullo received pay statements along with his bi-monthly paychecks of wages for half-month-pay-periods, Defendants omitted all information regarding his hourly rates of pay, his overtime rates of pay, the number of regular hours worked and the number of overtime hours worked in each pay period.

99.     Moreover, many of Vullo's pay statements did not represent hours at all, but the statements representing hours worked did not include any information classifying the hours as regular or overtime hours and tellingly used the same false number of 86.67 as his hours worked in the pay

17

period.

100.    The reappearing number of 86.67 did not reflect any of the substantial overtime hours Vullo worked nearly every week for Defendants.

101.    Instead, the precise and reoccurring number of hours Defendants represented Vullo worked in a bi-monthly pay period of 86.67 reflects exactly 40 hours per week, if distributed evenly for each week in the pay period for which Defendants provided a number stating hours worked.

**Defendants Fail To Record All Hours Worked By Vullo And The Sales Employees In Violation Of The FLSA And The NYLL**

102.    Both the FLSA and the NYLL require employers, such as Defendants, to adequately record and maintain non-exempt employees' work hours, including regular hours worked in a seven-day week and overtime hours (i.e., time exceeding 40 hours) worked in a seven-day week, among other things. 29 CFR § 516.2; 12 NYCRR; NYLL § 195(4); 12 NYCRR § 142-2.6 98.

103.    Defendants, however, made no effort to accurately record Vullo or the Sales Employees' work hours, as required by the FLSA and the NYLL for non-exempt employees, such as inside sales people like Vullo and the Sales Employees.

104.    For example, Defendants did not provide Vullo and the Sales Employees with a punch-in punch-out time clock or any other system or program aimed at accurately recording the regular and overtime hours they worked each week.

**Nonetheless Other Records In Defendants' Possession, Custody And Control Reflect The Hours Vullo And The Sales Employees Worked, To Calculate The Damages For The Class And Collective Members**

105.    Despite Defendants' reckless disregard of their timekeeping obligations under both the FLSA and NYLL, Defendants have records in their possession, custody and control reflecting hours worked and wages paid that can assess damages to Vullo and members of the FLSA Collective

18

and the Rule 23 Class.

106.     As inside sales people, Defendants required Vullo and the Sales Employees to be logged into certain software on Defendants' computer system while they performed certain work.

107.     Vullo and the Sales Employees each had their own individual user identification to access the software, which during Vullo's tenure included "Salesforce" and Fonality's "Heads Up Display" application.

108.     As such, through these computer logs and Defendants' payroll records, Vullo and the Sales Employees' damages should be ascertainable, although the software would not have captured certain worked hours.

### 2.     Negotiations Specialists

**Defendants Failed To Pay Vullo And The Other Negotiations Specialists Any Pay For Those Hours They Worked Above Forty Hours Per Week.**

109.     Defendants hired Representative Plaintiff, Vullo, and members of the Collective and Class who performed the function of the Debt Specialists (collectively, the "Negotiations Specialists") to work fixed weekly schedules for hourly pay, plus an opportunity to earn commissions.

110.     Vullos's compensation when he was a Negotiations Specialist with Defendants was $14.45 per hour. Defendants, upon information and belief, paid all their Debt Specialists similar compensation to Vullo and calculated Vullo and their Negotiations Specialists' commissions, when earned, using a uniform formula Defendants created.

111.     Vullo worked nine-hour shifts each weekday, from 9 a.m. - 6 p.m. All the other Negotiations Specialists worked the same hours.

112.     While Vullo was a Negotiations Specialist he worked an average of two overtime hours per week, as did, upon information and belief, the other Negotiations Specialists.

113.    Defendants never paid Vullo overtime compensation or any pay for those hours he worked above 40 hours per week as a Negotiations Specialist. Upon information and belief, Defendants never paid the other Negotiations Specialists overtime compensation or any pay for those hours they worked above 40 hours per week.

**Defendants Disregard Their Legal Obligation To Provide Written Notice To Vullo And The Negotiations Specialists Disclosing Their Compensation, Then Unlawfully Fail To Furnish Them With Accurate And Complete Pay Statements For Each Pay Period**

114.    Defendants did not provide Vullo, and upon information and belief, any Negotiations Specialists, written notice describing the terms of their compensation, their pay rates and their overtime premium pay rate, among other things, at the time of hire, as mandated by § 195(1) of the NYLL, or at any time.

115.    Indeed, Defendants did not communicate in any way, written or otherwise, to Vullo and, upon information and belief, to their Negotiations Specialists that both the FLSA and NYLL obligated Defendants to pay them 1.5 times their hourly pay rate for all time worked in excess of forty hours during a seven-day week.

116.    Upon information and belief, Defendants also did not provide the Negotiations Specialists with accurate or complete wage statements with each pay check, as required by NYLL § 195(3).

117.    Section 195(3) of the NYLL mandates Defendants furnish a statement with every wage payment, which for "all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided  by New York state law or regulation, the statement shall include the regular hourly rate or rates of pay; the overtime rate or  rates of pay; the number of regular hours worked, and the number of overtime hours worked."

118.    Vullo received pay statements that did not represent the hours he worked.

**Defendants Fail To Record All Hours Worked By Vullo And The Negotiations Specialists In Violation Of The FLSA And The NYLL**

119.    Defendants made no effort to accurately record Vullo or the Negotiations Specialists' work hours, as required by the FLSA and the NYLL for non-exempt employees.

120.    For example, Defendants did not provide Vullo and the Negotiations Specialists with a punch-in punch-out time clock or any other system or program aimed at accurately recording the regular and overtime hours they worked each week.

*** 

**Defendants' Violations Of The FLSA And NYLL Were Willful, In Bad Faith And Egregious, As Documents Show Defendants Were Cognizant Of Their Legal Obligations To Pay Overtime And Maintain Accurate Time Records, Yet Intentionally Evaded Them**

121.    Defendants' utter disregard of the FLSA and NYLL's mandates to pay overtime and record and maintain accurate time records was willful and in bad faith.

122.    Defendants knew they were obligated to pay non-exempt employees overtime compensation.

123.    Indeed, the "National Debt Relief Employee Handbook" states, among other things:

> ➢    **"NON-EXEMPT EMPLOYEES** are entitled to overtime pay as required by applicable Federal, State, and City law.  Non-exempt employees must record their hours on company time cards, or in the time-clock machine daily. Accurately recording all of your time is required in order to be sure that all hours worked are paid for. Such staff is expected to follow the established procedures in keeping an accurate record of hours worked." Handbook p. 15 (emphasis in original).

> ➢    "On hire, the Department of Human Resources will notify you of your employment classification." *Id.*

> ➢    "Accurately recording time worked is the responsibility of every non-exempt employee. *Time worked* is defined as time actually spent at or for NDR performing assigned duties. Employees are responsible for accurately recording their time spent at NDR." *Id.* at p. 17-36

21

(emphasis in original).

➤ "Please remember that the Time Clock is a legal instrument. Altering, falsifying, tampering with time records or recording time on another team member's time record will result in disciplinary action, including termination of employment." *Id.*

➤ "Authorized personnel will review time records each week. *Id.*

➤ "Time must be recorded as follows:

- Immediately before starting your shift,
- Immediately after finishing work before your meal period,
- Immediately before resuming work after your meal period,
- Immediately after finishing work."
*Id.*

➤ "**OVERTIME**" "Some positions at NDR involve occasional or periodic overtime; employees must work overtime as required by their Supervisors. Employees are designated as covered for overtime by the Federal Labor Act Standards Act (non-exempt) or not covered (exempt)." *Id.* at p. 18 (emphasis in original).

➤ "NDR determines the status of each Employee as to which category is fit by following the FLSA guidelines and regulations. Non-exempt employees, payment of overtime hours must comply with this Act." *Id.*

➤ "Non-exempt employees are normally paid overtime at one and a half their regular rate for hours worked over forty (40) during the workweek." *Id.*

124. While Defendants knew about their obligations and employee classifications under the FLSA, as evidenced, among other things, by their Handbook, they provided Vullo and the Sales Employees and Negotiations Specialists with no system, or "Time Clock," through which to record their time; Human Resources never advised Vullo of his FLSA classification, which was "non-exempt"; and Defendants, contrary to their own policies in the Handbook, in addition to their legal obligations pursuant to the FLSA and the NYLL, did not pay Vullo and the Sales Employees and Negotiations Specialists overtime compensation despite the many hours Defendants suffered,

permitted, and required Vullo and the Sales Employees and Negotiations Specialists to work.

125.    Defendants' pay statements show Defendants knew they must pay non-exempt employees overtime compensation.

126.    Defendants misrepresented hours worked on pay statements to appear as if employees worked exactly 40 hours per week when they did not.

127.    The "National Debt Relief Employee Handbook" Defendants provided confirms Defendants were aware of their FLSA and NYLL obligations to non-exempt employees, like Vullo and the Sales Employees and Negotiations Specialists.

### Just After Vullo's Employment With Defendants Ends, Defendants Introduce A Policy Requiring Employees Outside Of The FLSA Class And Rule 23 Collective To Agree To Arbitrate Any Employment Disputes And To Waive Their Rights To Pursue Any Such Claims As Members Of A Class Or Collective Action

128.    In or around February 2016, Defendants circulated a revised employee handbook containing an arbitration agreement and a class and collective action waiver, which Defendants stated employees must sign as a condition of their continued employment.

129.    Vullo and, by the definitions contained herein, members of the FLSA Collective and the Rule 23 Class, however, were not bound by any such agreement and did not waive their rights to pursue in court the claims in this Action or waive their rights to proceed as members of an FLSA collective and / or a Rule 23 class.

### FIRST CLAIM

### <u>VIOLATION OF THE FLSA</u>

### (Failure To Pay Overtime Compensation In Violation Of The FLSA, 29 U.S.C. §§ 201, *et seq.*, And CFR §§ 778.100-778.122 On Behalf Of Representative Plaintiff And The FLSA Collective)

130.    Representative Plaintiff on behalf of himself and the FLSA Collective repeats and

realleges all paragraphs herein, as if separately alleged.

131.    Representative Plaintiff has consented in writing to be part of the FLSA Collective, pursuant to 29 U.S.C. § 216(b). Vullo's written consent form is attached as <u>Exhibit A</u>. Vullo anticipates as this case proceeds, other individuals will also sign consent forms to join the FLSA Collective.

132.    At all relevant times, Defendants have been, and continue to be, covered "employers" engaged in interstate commerce within the meaning of the FLSA, 20 U.S.C. § 203. At all relevant times, Defendants have employed and / or continue to employee members of the FLSA Collective, including Vullo, the Representative Plaintiff, as covered, non-exempt employees within the FLSA's meaning.

133.    Upon information and belief, Defendant NDR has annually grossed in excess of $500,000 in operating revenues.

134.    The FLSA requires covered employers, such as Defendants, to compensate non-exempt employees at a rate of 1.5 times their hourly rate of pay for each hour worked for Defendants over 40 in a week. FLSA. § 207(a)(l ).

135.    Defendant employed Representative Plaintiff and the FLSA Collective for workweeks exceeding 40 hours, yet willfully failed to compensate them for their time worked in excess of forty hours per week, at a rate of at least 1.5 times their regular hourly rate, violating the FLSA, 29 U.S.C. § 207(a)(l).

136.    The complete records concerning the number of hours worked by Representative Plaintiff and the members of the FLSA Collective, as well as the compensation they received in workweeks in which they worked overtime, should be possessed and controlled by Defendants, and Representative Plaintiff is unable to provide the exact amount due and owed to him and the FLSA

collective now, but through Defendants' records, the amount can be ascertained.

137.    Defendants' unlawful conduct described herein was willful and intentional. Defendants knew or should have known the practices described in the complaint were illegal. Indeed, Defendants' Handbook and false representations on Representative Plaintiff's pay statements show they knew of their overtime obligations to Representative Plaintiff and the FLSA Collective, but intentionally ignored them going so far as to make false representations on pay statements to do so. Defendants failed to make a good faith effort to comply with the FLSA.

138.    Because Defendants acted willfully in violating the FLSA, the statute of limitations is three years, pursuant to 29 U.S.C. § 255.

139.    As a consequence of Defendants' willful and bad-faith underpayment of wages, alleged herein, Representative Plaintiff and members of the FLSA Collective have incurred damages for which Defendants are liable in the amount of unpaid overtime compensation for the straight time overtime worked each week; 1.5 times their hourly rate of pay for the additional unpaid overtime hour worked each week beyond their straight time; liquidated damages in an amount equal to their unpaid wages, as the FLSA provides as compensatory relief in lieu of interest; attorneys' fees; costs and such other legal and equitable relief as this Court deems just and proper.

## SECOND CLAIM

## <u>VIOLATION OF THE NYLL</u>

**(Failure To Pay Overtime Compensation In Violation Of
NYLL §§ 190, *et seq.*, NYLL §§ 560, *et seq.*, And 12 NYCRR §§ 142-2.2 And 142-2.9,
On Behalf of Representative Plaintiff And The Rule 23 Class)**

140.    Representative Plaintiff on behalf of himself and the Rule 23 Class repeats and realleges all paragraphs herein, as if separately alleged.

141.    At all relevant times to this Action, Defendants employed Representative Plaintiff and the Rule 23 Class within the meaning of NYLL §§ 190 and 651.

142.    New York Labor Law requires that employers, such as Defendants, pay non-exempt, covered employees, such as Representative Plaintiff and the Rule 23 Class, overtime at a rate of 1.5 times their regular hourly rate of pay for all time worked in excess of forty hours in a seven-day workweek.

143.    Defendants suffered, permitted, and required Representative Plaintiff and the Rule 23 Class to work more than forty hours in a seven-day workweek, but failed to compensate them at the overtime premium rate for the straight-time hours they worked each week and paid them nothing in hourly wages for the countless hours of overtime they worked beyond their straight time hours, violation the NYLL. 12 NYCRR § 142-2.2.

144.    The complete records concerning the number of hours Representative Plaintiffs and the Rule 23 Class worked, as well as the compensation they received in workweeks that exceeded 40 hours, are in Defendants' possession, custody, and control. Accordingly, Representative Plaintiff is unable to state the exact amount of unpaid wages and overtime pay for which Defendants are liable to him and the Rule 23 Class now, but the amount is ascertainable through Defendants' records.

145.    Defendants' unlawful conduct described herein was willful, intentional, and in bad faith. Defendants knew or should have known the practices described in the complaint were illegal. Indeed, Defendants' Handbook and misrepresentations on Representative Plaintiff's pay statements show they knew their overtime obligations to Representative Plaintiff and the Rule 23 Class, but intentionally ignored the law, going so far as to make misrepresentations on pay statements to do so, clearly acting in bad faith.

146.     Because of Defendants' willful and bad faith violations of the NYLL, Representative Plaintiff and the Rule 23 Class are entitled to recover from Defendants unpaid overtime compensation for their straight time overtime worked each week; 1.5 times their hourly rate of pay for the additional unpaid overtime worked each week beyond their straight time hours; an amount equal to their unpaid wages in liquidated damages, as the NYLL provides, representing punitive damages as a result of Defendants' willful and bad faith violations of the NYLL; reasonable attorneys' fees and costs; pre- and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

### THIRD CLAIM

### VIOLATION OF THE NYLL

**(Failure To Pay Minimum Wage, Violating
NYLL §§ 190, *et seq.*, NYLL §§ 650 *et seq.*, And 12 NYCRR §§ 142-2.1 And 142-2.9,
On Behalf Of Representative Plaintiff And The Rule 23 Class)**

147.     Representative Plaintiff on behalf of himself and the Rule 23 Class repeats and realleges all paragraphs herein, as if separately alleged.

148.     Defendants have engaged in a widespread pattern, policy, and practice of violating the NYLL's minimum wage requirements.

149.     At all relevant times to this Action, Representative Plaintiff and the Rule 23 Class members have been employees, and Defendants have been employers, within the meaning of NYLL §§ 190, 651(5), and supporting New York State Department of Labor Regulations.

150.     The minimum wage provisions of Article 19 of the NYLL and the supporting New York State Department of Labor Regulations apply to Defendants and protect the Rule 23 Class members. NYLL §§ 560, *et seq.*; 12 NYCRR § 142-2.1

151.     Defendants failed to pay Representative Plaintiff and the Rule 23 Class New York's

27

statutorily-required minimum wage to which they are entitled for weeks in which Representative Plaintiff and the Rule 23 Class did not earn commissions, violating the NYLL. NYLL §§ 190, *et seq.*; NYLL §§ 560 *et seq.*; 12 NYCRR 142-2.1 and 142-2.9.

152.    Defendants' unlawful conduct described herein was willful and intentional. Defendants knew or should have known the practices described in the complaint were illegal. Moreover, Defendants failed to make a good faith effort to comply with the NYLL.

153.    Defendants have engaged in a widespread pattern, policy, and practice of violating the NYLL as detailed herein.

154.    At all times relevant hereto, Representative Plaintiff and the Rule 23 Class members were covered employees of Defendants, who are and were covered employers, within the meaning of NYLL §§ 190, 651(5), 652, and the supporting New York State Department of Labor Regulations.

155.    As such, for hours worked in between 2010 and year-end 2013, the NYLL obligated Defendants to pay at least $7.25 per hour for the first 40 hours in a seven-day work week and pay non-exempt employees, such as Representative Plaintiff and the Rule 23 Class, a 1.5 multiple of that, $10.88, in minimum wage for each overtime hour worked in a week. NYLL §§ 560, *et seq.*; 12 NYCRR § 142-2.1.

156.    In 2014, the NYLL required Defendants to pay employees a minimum wage of $8.00 per hour for the first 40 hours worked and overtime wages of at least $12.00 per hour.

157.    In 2015, the NYLL obligated Defendants to pay employees a minimum wage of $8.75 per hour for the first 40 hours worked per week and overtime wages of at least $13.13 per hour.

158.    In 2016, the NYLL required Defendants to pay employees a minimum wage of

$9.00 per hour and overtime wages of at least $13.50 per hour.

159.     From 2017, the NYLL required Defendants to pay employees a minimum wage of $10.40 per hour and overtime wages of at least $15.60 per hour.

160.     Defendants, however, failed to pay Vullo and the Class and Collective members minimum wage for the substantial number of weeks they worked for Defendants and did not earn commissions.

161.     Because the records concerning the number of hours worked by Representative Plaintiff and the Rule 23 Class, as well as the compensation they received, are in Defendants' possession, custody, and control, Representative Plaintiff is unable now to state the extent to which Defendants violated the NYLL's minimum wage provisions. However, damages are ascertainable through Defendants' records.

162.     Because of Defendants' willful and bad-faith failure to pay Representative Plaintiff and the Rule 23 Class members minimum wage every week throughout their employment with Defendants, Representative Plaintiff and the Sales Employees and Negotiations Specialists are entitled to recover unpaid wages, double liquidated damages as the NYLL provides, pre- and post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief this Court deems just and proper.

## FOURTH CLAIM

## <u>VIOLATION OF THE NYLL</u>

**(Failure To Provide Appropriate Wage Statements,
Violating NYLL § 195(3) and 12 NYCRR § 142-2.7,
On Behalf Of Representative Plaintiff And The Rule 23 Class)**

163.     Plaintiff repeats and realleges all paragraphs herein, as if separately alleged.

164.     Section 195(3) of the NYLL obligated Defendants to accompany Representative

Plaintiff and the Rule 23 Class members' paychecks with a wage statement specifying, among other things, their regular hourly rate or rates of pay; their overtime rate or rates of pay; the number of regular hours they worked, and the number of overtime hours they worked.

165.     Defendants, however, failed to provide Representative Plaintiff and members of the Rule 23 Class with complete or accurate wage statements, as the NYLL requires.

166.     For example, Representative Plaintiff's wage statements omitted his hourly rate of pay, his overtime rate of pay, and the number of regular hours worked and the number of overtime hours worked.

167.     Moreover, while most wage statements did not represent any number of hours worked and none classified hours as regular or overtime, the bi-monthly pay statements that indicated hours worked used the identical and false number of 86.67, which, if distributed evenly over the half month period, totaled exactly 40 hours per week.

168.     Defendants' willful and unlawful conduct violating NYLL §195(3) damaged Representative Plaintiff and members of the Rule 23 Class. Accordingly, pursuant to NYLL § 195(3), Representative Plaintiff and the Rule 23 Class members are each entitled to recover $250 a day for each day Defendants illegally withheld complete and accurate wage statements, each in an amount up to $5,000, plus costs and attorneys' fees, and any such other legal and equitable relief this Court deems just and proper.

### FIFTH CLAIM

### <u>VIOLATION OF THE NYLL</u>

**(Failure To Notify, Violating NYLL § 195(1),
On Behalf Of Representative Plaintiff And The Rule 23 Class)**

169.     Plaintiff repeats and realleges all paragraphs herein, as if separately alleged.

170.     NYLL § 195(1) required Defendants to provide Representative Plaintiff and the Rule 23 Class members with written notice explaining, among other things, the terms of their compensation and their overtime rate of pay within ten business days of their dates of hire.

171.     Defendants, however, did not provide Representative Plaintiff with any such notice and, upon information and belief, did not provide members of the Rule 23 Class with such notice.

172.     Defendants' violation of NYLL §195(1) damaged Representative Plaintiff and the Rule 23 Class.

173.     Because of Defendants' willful and unlawful violation of NYLL § 195(1), Representative Plaintiff and the Rule 23 Class members have sustained damages for each day Defendants illegally neglected to provide the required written notice pursuant to the NYLL and, in accordance with NYLL § 195(1), each are entitled to recover damages of $50 a day for each day Defendants failed to provide such notice, in an amount up to $5,000 per individual, plus costs, attorneys' fees, and any such other legal and equitable relief this Court deems just and proper.

## PRAYER FOR RELIEF

**WHEREFORE,** Representative Plaintiff on behalf of himself and all members of the proposed FLSA Collective and Rule 23 Class respectfully requests that this Court:

A.     Accept jurisdiction over this matter;

B.     Allow Representative Plaintiff to issue notice of this collective action, or have the Court issue such notice, to all persons who are presently or have been, at any time during the six years immediately preceding the filing of this Action and up to and including the date of this Court's issuance of court-supervised notice, employed by Defendants in positions performing inside sales, or the duties of the Negotiations Specialists, which informs them that this Action has been filed, the nature of this Action and their right to join the Action if they believe they have not

been compensated properly, including, but not limited to, not receiving premium overtime wages for overtime hours worked;

C.      Award Representative Plaintiff and the FLSA Collective unpaid wages and an equal amount in liquidated damages as provide for by the FLSA, 29 U.S.C. § 201, *et seq.* and the supporting United States Department of Labor regulations;

D.      Certify this Action as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (3);

E.      Designate Representative Plaintiff, Nicholas Vullo, as Representative of the Rule 23 Class, and his counsel of record as Class Counsel;

F.      Issue a declaratory judgment that the practices complained of herein are unlawful under NYLL Article 6 §§ 190, *et seq.* and Article 19 §§ 650, *et seq.*, and the supporting New York State Codes, Rules and Regulations;

G.      Award Representative Plaintiff and the Rule 23 Class unpaid wages and an equal amount in liquidated damages as the NYLL provides;

H.      Award Representative Plaintiff and the Rule 23 Class compensatory damages for Defendants' failure to provide written notice regarding their compensation terms upon commencement of employment, pursuant to the NYLL;

I.      Award Representative Plaintiff and the Rule 23 Class compensatory damages for Defendants' failure to furnish accurate and complete wage statements for each pay period, as the NYLL provides;

J.      Issue an injunction requiring Defendants to pay all statutorily-required wages, pursuant to the NYLL;

K.      Award pre- and post- judgment interest;

L.      Award attorneys' fees and costs; and

M.      Award any such other further legal and equitable relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Representative Plaintiff demands a jury trial on all questions of fact raised by this Complaint.

Dated: New York, New York
August 7, 2018

Law Office of Andrea Paparella, P.L.L.C.

By:     /s/ Andrea M. Paparella
Andrea M. Paparella
150 W. 28th Street, Suite 1603
New York, New York 10001
Telephone: (212) 675-2523
Facsimile: (914) 462-3287
Email: ap@andreapaparella.com

EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
NICHOLAS VULLO, on behalf of himself and all
others similarly situated,

                                Plaintiffs,

          -against-

NATIONAL DEBT RELIEF LLC, DANIEL
TILIPMAN, and ALEX KLEYNER,

                         Defendants.
------------------------------------------------------------------ X

__ Civ. ____

**CONSENT TO BE A PARTY
PLAINTIFF**

     I consent to be a party plaintiff in the foregoing lawsuit against National Debt Relief LLC,

Daniel Tilipman, and Alex Kleyner in order to seek redress for violations of the Fair Labor Standards

Act, pursuant to 29 U.S.C. § 201, *et. seq*. I hereby designate Law Office of Andrea Paparella, PLLC

to represent me in the lawsuit.

**Signature**

Nicholas Vullo
**Print Name**

8/16/18
**Date**

4600 N 24th St APL 357
**Address**

Phoenix AZ 85016
**City, State and Zip Code**