**Law Office of Andrea Paparella, PLLC**
150 W. 28th Street, Suite 1603
New York, New York 10001-5304
Phone: 212-675-2523
Fax: 914-462-3287
Email: amp@andreapaparella.com

April 19, 2019

<u>**VIA ECF**</u>

The Honorable Katherine Polk Failla, U.S.D.J.
United States District Court
Southern District of New York
Thurgood Marshall US Courthouse
40 Foley Square
New York, NY  10007

Re:     *Nicholas Vullo v. National Debt Relief LLC, Daniel Tilipman, and Alex Kleyner*
        No.: 1:18-cv-07126

Dear Judge Failla:

Pursuant to Your Honor's March 26, 2019 Order, the parties enclose for your review a copy of their proposed settlement agreement.  This settlement agreement represents a fair and reasonable compromise of the parties' *bona fide* dispute.  *Cf. Wolinsky v. Scholastic, Inc.,* 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (stating in reviewing a proposed FLSA settlement, the "ultimate question" is whether it "reflects a fair and 'reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching'") (internal citations omitted).

**Plaintiff's Range of Possible Recovery**

Mr. Vullo worked for National Debt Relief LLC ("NDR") as a Sales Credit Associate, Debt Specialist Sales, and Negotiator from September 30, 2013 through December 26, 2015 (*i.e.* for approximately 117 weeks).  He claims NDR misclassified certain positions as exempt from state and federal overtime requirements, and that, as a result, it failed to pay him all of the overtime wages to which he is entitled.  In filing this action, he sought unpaid overtime, liquidated damages, statutory damages, and attorneys' fees under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL").

Regarding Mr. Vullo's range of recovery, NDR contends his likely recovery is zero as he was properly classified for all positions held and paid all amounts owed.  Further, NDR possesses additional contractual and legal defenses which bar Mr. Vullo's claims.  Assuming Mr. Vullo could

Hon. Katherine Polk Failla, U.S.D.J.
April 19, 2019
Page 2

prove otherwise at trial, though, he originally asserted that he worked 20 hours of overtime in virtually all of the 117 weeks he worked at NDR. Accepting the allegation as true, this translates into a value of approximately $55,013.40 (20 hours x 117 weeks x $23.51 (his average alleged overtime rate)), or $110,026.80, when liquidated. Note that this calculation ignores several risk factors accounted for at mediation. First, it assumes that Mr. Vullo in fact can prove that NDR misclassified him. Second, it assumes all overtime damages at a time and one-half rate, with no accounting for the possible application of a half-time rate for some or all of the hours (as Mr. Vullo did concede he understood his salary was designed to cover 45 hours per week). Third, it accepts that Mr. Vullo worked 60 hours per week in over 90 percent of his work weeks. Fourth, it assumes liquidated damages, *i.e.,* that Mr. Vullo will be able to prove NDR willfully violated the FLSA.

In contrast, NDR has a separation agreement and release executed by Mr. Vullo, whereby he releases any and all claims against NDR, including but not limited to his claims pursuant to the NYLL. NDR also has computer records, in the form of salesforce.com activity logs, that it contends show when Mr. Vullo actually worked. Although, Mr. Vullo contends the salesforce.com records do not accurately reflect all the hours he worked, those records reflect that he only worked more than 40 hours in 5 of the 20 weeks at issue under the FLSA, assuming the 3-year statute of limitations applies, which NDR contends it does not. Further, in those 5 weeks Mr. Vullo only worked a total of 2.75 overtime hours. Accepting Mr. Vullo's self-asserted average overtime rate of $23.51, this equates to $64.65 in unpaid overtime, or $129.31 including liquidated damages (for which Mr. Vullo would have to prove the alleged violation was willful). Alternatively, records show that if it assumed that Mr. Vullo did not take lunch, and worked through lunch everyday (which he asserted), this would mean he would have 77.25 hours of uncompensated overtime, or $1,816.15 (or $3,632.30).

Based on the respective positions of the parties, it is readily apparent that the settlement amount of $10,000.00 is a fair and reasonable compromise of a disputed claim. Indeed, Mr. Vullo is receiving more than NDR's records show he is entitled to should he prevail.

**The Extent to Which the Settlement Will Enable the Parties to Avoid Anticipated Burdens and Expenses in Establishing their Respective Claims and Defenses**

Settlement allows both Mr. Vullo and NDR to avoid the burdens and expenses attendant to establishing their respective claims and defenses. For his part, Mr. Vullo achieves immediate payment and avoids the stress and hassle of written discovery, a deposition, etc. Likewise, NDR spares its business the disruption caused by any litigation and the attorneys' fees and costs necessary to litigate its defenses. In short, the parties were able to settle this case at a very early stage. Thus, they both save much in the way of time and money and in light of the discovery, briefing, and trial that would otherwise likely be necessary to test their respective positions.

**The Seriousness of the Litigation Risks Faced by the Parties**

The parties each face significant litigation risk. If NDR prevails on its release of claims, statute of limitations and exemption defenses, Mr. Vullo risks a zero-sum recovery, along with

failing to recover incurred costs. NDR, on the other hand, faces the risk of not prevailing on its defenses, which could have implications beyond this case and its exposure vis-à-vis Mr. Vullo.

**Whether the Settlement Agreement is the Product of Arm's Length Bargaining Between Experienced Counsel**

Mr. Vullo and NDR were each represented by counsel experienced in wage and hour litigation in this case, including in their settlement negotiations. Additionally, Attorney Joan Stearns Johnson mediated this case. Attorney Johnson is similarly well experienced in mediating wage and hour cases. The relatively short time it took the parties to distill their respective claims and defenses and to uncover the facts necessary to evaluate them evidence Counsel's experience. By establishing key variables (*e.g.*, preexisting enforceable agreements, how much Mr. Vullo made and what evidence NDR had to establish hours worked), Counsel enabled the parties to begin cultivated negotiations that resulted in a fair-minded compromise.

**The Possibility of Fraud or Collusion**

Apart from the fact that the settlement in this matter was reached in mediation, the terms of the proposed settlement agreement establish that this case does not involve fraud or collusion. Both parties were represented by competent counsel and indeed, settlement notwithstanding, both parties remain entrenched in their respective positions. Moreover, Mr. Vullo is a former employee, meaning it is impossible that he experienced either asserted or perceived pressure from NDR to settle his claims.

**Attorneys' Fees**

Law Office of Andrea Paparella, PLLC ("Paparella") is receiving $3,600.00 ($3,200.00 for attorneys' fees and $400.00 in costs) from the total settlement amount of $10,000.00. This amount is based on Mr. Vullo's 33 1/3% contingency fee agreement with Paparella, with the percentage being based on the net recovery after subtracting the $400.00 in costs from the $10,000.00 settlement amount. Provided no other factors suggest an unreasonable fee, under the "percentage of the fund" method, fee awards of one-third or less of the settlement amount are generally accepted in this District. *See Chauca v. Abitino's Pizza 49th St. Corp.*, 2016 WL 3647603, at *2 (S.D.N.Y. June 29, 2016) (Moses, M.J.). But "the appropriate denominator is the total settlement net of costs." *Beckert v. Rubinov*, 2015 WL 8773460, at *3 (S.D.N.Y. Dec. 14, 2015) (emphasis in the original).

The fee to be paid to Paparella is fair and reasonable. The value of Paparella's time spent on this matter, as calculated by her regular hourly rates, is more than ten times the total fee Paparella will receive for her representation of Vullo in his claims against NDR.

\*\*\*

Hon. Katherine Polk Failla, U.S.D.J.
April 19, 2019
Page 4

In short, the enclosed proposed settlement agreement reflects a fair and reasonable compromise of the parties' *bona fide* dispute. Accordingly, the parties respectfully request that the Court enter and order approving it.

Respectfully submitted,

| LAW OFFICE OF ANDREA PAPARELLA, PLLC | GREENBERG TRAURIG, LLP |
|---|---|
| *s/ Andrea M. Paparella* | *s/ Nicholas A. Corsano* |
| Andrea M. Paparella | Nicholas A. Corsano |
| 150 W. 28th Street, Suite 1603 | 200 Park Avenue |
| New York, New York 10001 | New York, New York 10166 |
| (212) 675-2523 | (212) 801-6827 |
| amp@andreapaparella.com | corsanon@gtlaw.com |
| *Attorneys for Plaintiff* | *Attorneys for Defendants* |

Enclosure

## SETTLEMENT, RELEASE AND STIPULATION OF DISMISSAL AGREEMENT

This Settlement, Release and Stipulation of Dismissal (the "**Agreement**") is made and entered into April 18, 2019 ("**Effective Date**") by and between Nicholas Vullo, on behalf of himself and his heirs, representatives agents and assigns (collectively, "**Mr. Vullo**"), on the one hand, and National Debt Relief, LLC on behalf of itself, its parent, subsidiaries and affiliates, and its and their officers (including but not limited to Daniel Tilipman and Alex Kleyner), directors, and agents (collectively, "**NDR**"), on the other. Each of Mr. Vullo and NDR may be referred to herein as a "**Party,**" or collectively as the "**Parties**."

## WITNESSETH

WHEREAS, a dispute arose between the Parties related to Mr. Vullo's employment with NDR and Mr. Vullo filed an action against NDR captioned *Nicholas Vullo, on behalf of himself and all others similarly situated v. National Debt Relief LLC*, *Daniel Tilipman, and Alex Kleyner,* in the United States District Court for the Southern District of New York, Case No. 1:18-cv-07126-KPF (the "**Lawsuit**");

WHEREAS, the Court hearing the Lawsuit allowed the Parties to mediate it in private;

WHEREAS, on January 11, 2018, the Parties privately mediated the case before mediator Joan Stearns Johnson, Esquire, and

WHEREAS, the private mediation resulted in the Parties reaching an agreement to satisfy all claims in the Lawsuit;

NOW, THEREFORE, for and in consideration of the mutual promises contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties, intending to be legally bound, hereby agree as follows:

1. **Payment by NDR**. In full satisfaction of all claims that Mr. Vullo asserted, or could have asserted, in the Lawsuit, NDR agrees to pay Mr. Vullo and Mr. Vullo agrees to accept a sum total of Ten Thousand U.S. Dollars ($10,000.00 U.S.D.) (the "**Settlement Amount**"). The Settlement Amount shall be payable within fourteen (14) business days of the Court issuing an Order that: (a) approves this Agreement as a fair and reasonable settlement of Mr. Vullo's claims asserted in the Lawsuit; and (b) dismisses the Lawsuit in its entirety and with prejudice. The Settlement Amount shall be paid as follows;

   i. One check in the amount of Three Thousand Two Hundred Dollars and Zero Cents ($3,200.00), which amount shall be deemed as wages earned by Mr. Vullo; NDR shall issue a Form W-2 to Mr. Vullo for these claimed unpaid wages.

   ii. One check in the amount of Three Thousand Two Hundred Dollars and Zero Cents ($3,200.00), which amount shall be deemed as liquidated damages payable under the Fair Labor Standards Act and New York Labor Law to Mr. Vullo; NDR shall issue a Form 1099 to Mr. Vullo for these liquidated damages.

      iii.      One check in the amount of Three Thousand Six Hundred Dollars and Zero Cents ($3,600) ($3,200.00 for fees and $400.00 for costs), which amount shall be deemed as attorney's fees and legal costs to be paid to Mr. Vullo's counsel, the Law Offices of Andrea Paparella, PLLC. NDR shall issue a Form 1099 to the Law Offices of Andrea Paparella, PLLC and Mr. Vullo for these attorney's fees and costs.

2. **Injunctive Relief**. The Parties agree that damages stemming from a breach of Section 3 of this Agreement may be difficult to prove, and the Parties therefore agree that any breach of that Section, as determined by a court of competent jurisdiction, shall lead to irreparable harm, and shall give rise to the right for injunctive relief in addition to any other right or remedy provided by law and/or equity.

3. **Release by Vullo**. In consideration for the payment of the Settlement Amount as set forth in Paragraph 1 herein, Mr. Vullo hereby releases, waives and forever discharges all claims against NDR, their parent and affiliate companies, subsidiaries, divisions, business units, committees, groups, insurers and their predecessors, successors, assigns, trainees, administrators, executors, agents, accountants, attorneys, as well as their former and current officers, owners and employees (collectively referred to as the "**RELEASEES**"), whether known or unknown, which against the RELEASEES, Mr. Vullo or his heirs, executors, administrators, successors, and/or assigns, may now have or hereinafter can, shall or may have relating to Mr. Vullo's employment and/or separation from employment with NDR, for alleged unpaid minimum wages, overtime pay, spread of hours compensation, liquidated damages and any and all associated penalties arising under any federal, state or local law, including but not limited to, the Fair Labor Standards Act, 29 U.S.C. § 201, the New York Labor Law, as well as section 650 et seq., including Part 142, section 142-2.2 and section 142-2.4 of Title 12 of the Official Compilation of Codes, Rules and Regulations promulgated, by the Commissioner of Labor permit to the Minimum Wage Act (Article 19 of the New York State Labor Law), the Equal Pay Law, N.Y. Lab. Law §§ 194 to 199-a, and the New York City Administrative Code, from the beginning of the world to the day and date Mr. Vullo signs this Agreement up to and including the date on which the Court issues its order finally approving of this Agreement as a fair and reasonable compromise of Mr. Vullo's claims. This release in no way waives any claims arising from an alleged breach of this Settlement Agreement.

The Parties agree and acknowledge that this Settlement Agreement settles the dispute between the Parties regarding the number of hours Mr. Vullo worked for NDR and the payment allegedly due and owing therefor.

The Parties also agree and acknowledge that the Settlement Amount is the amount due and owing for the disputed number of hours Mr. Vullo claims he had worked and for which NDR had not paid him.

4. **Waiver and Relinquishment of Rights**. In furtherance the releases set forth in Section 3 above, each Party respectively hereby acknowledges that it knowingly and voluntarily waives its rights to any wage related claims against the other Party which could have been brought as part of the Lawsuit.

2

5. **No Admissions**. This Agreement, including the release of claims herein, constitutes a compromise of disputed claims, and nothing contained in this Settlement Agreement shall be construed as an admission of liability on the part of any of the Parties, by whom all liability is expressly denied.

6. **Voluntary Consent**. All Parties further represent and acknowledge that in executing this Agreement:

   a. They have been afforded full opportunity to discuss all aspects of this Agreement with their legal counsel;
   b. They have carefully read and fully understand all of the provisions of this Agreement; and
   c. They have voluntarily and knowingly signed this Agreement.

7. **No Modifications**. No amendment or modification of this Agreement is valid unless executed in writing with the same formality as this present Agreement and by the same Parties.

8. **No Assignment**. Each Party hereby warrants that it has not sold, encumbered, or assigned any rights or claims against each other except as provided for herein.

9. **Binding Effect**. The terms are and shall be binding upon each of the Parties hereto, their heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest and assigns, and upon all other persons claiming any interest in the subject matter hereto through any of the Parties.

10. **Attorneys' Fees**. In the event that either Party brings suit to enforce any provision of this Agreement, the prevailing party in any such action shall be entitled to an award of its attorneys' fees.

11. **Governing Law and Venue**. This Agreement shall be construed and enforced in accordance with the laws of the State of New York, regardless of the law of any other State concerning conflicts of laws.

12. **No Presumptions**. The language used in this Agreement will be deemed to be the language chosen by each of the Parties to express their mutual intent. In the event of an ambiguity or question of intent or interpretation arises, this Agreement will be construed as if drafted jointly by the Parties and no presumption or burden of proof will arise favoring or disfavoring any party by virtue of the authorship of any of the provisions of this Agreement.

13. **Singular and Plural Terms**. All terms in the singular shall include the plural, and all terms used in the plural shall include the singular.

14. **Severability**. The provisions of this Agreement are severable. If a court of competent jurisdiction rules that any portion of the Agreement is invalid or unenforceable, such portion shall be construed and enforceable as if it has been more narrowly drawn so as not to be invalid or unenforceable. Notwithstanding, the court's ruling as the validity or enforceability of a

portion of this Agreement will not affect the validity and enforceability of the remaining provisions in the Agreement.

15. **Counterparts and Facsimile Signatures**. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same Agreement. This Agreement may be executed and delivered via electronic facsimile transmission or via email with the same force and effect as if it were executed and delivered by the parties simultaneously in the presence of one another.

16. **Entire Agreement**. The terms of this Agreement are contractual and not mere recitals. This document sets forth the entire agreement between the Parties, fully supersedes any and all prior agreements or understanding between the Parties pertaining to the subject matter hereof, and there are no representations, warranties, covenants, promises or undertakings, oral or otherwise, that are not expressly set forth or expressly incorporated herein by reference.

17. **Authority to Enter Agreement**. The signatories hereto represent that they are duly authorized to enter into this Agreement as set forth below and that their signature is binding upon the party on whose behalf they sign.

18. **No Tax Consequence Representations**. The Parties make and made no representations regarding the tax or reporting consequences associated with this Agreement. The Parties each acknowledge that they are solely responsible for complying with any and all applicable federal and state tax or reporting requirements resulting from or associated with this Agreement.

IN WITNESS WHEREOF, the Parties, intending to be legally bound hereby, have read, and signed this Settlement Agreement.

Dated: April 19, 2019

_____
Nicholas Vullo

Dated: April __, 2019

_____
Alex Kleyner
Chief Executive Officer
On Behalf of National Debt Relief, LLC

Dated: April __, 2019

_____
Daniel Tilipman

Date: April __, 2019

_____
Alex Kleyner, in his individual capacity

4